## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABBE JOLLES<br>9806 Singleton Drive<br>Bethesda, MD 20817<br><br>On behalf of herself and the class defined herein<br><br><br>              Plaintiff,<br><br><br><br>   v.<br><br><br><br>LINCOLN HOLDINGS, LLC,<br>t/a Monumental Sports*Entertainment<br>2711 Centerville Road<br>Wilmington, DE 19808<br><br><br>Serve On:<br><br>CSC-LAWYERS INCORPORATING<br>SERVICE COMPANY<br>7 ST. PAUL STREET, SUITE 1660<br>BALTIMORE, MD 21202<br><br>            Defendant | **Civil Action No: 14-1617** |

## CLASS ACTION COMPLAINT

### CLASS ACTION COMPLAINT FOR JUDGMENT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF AND DECLARATORY RELIEF WITH JURY DEMAND

Abbe Jolles ("Named Plaintiff" or "Plaintiff"), through her undersigned attorneys, on

behalf of herself and the class defined herein, brings this action pursuant to D.C. Code § 28-

3905(k)(1)(B). This is a class action complaint for a judgment for money damages and

declaratory judgment and injunctive relief under the District of Columbia Consumer

1

Protection Procedures Act ("CPPA"), D.C. Code, §§ 28-3901 *et seq* against Lincoln.  Named

Plaintiff and all class members were actually injured by defendant's illegal trade practice.

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over this case under 28 U.S.C. §1332, as the

amount in controversy in this case, including the aggregated claims of those persons

falling within the class definition set forth below, is in excess of $5,000,000.00, the

Named Plaintiff is citizen of the State of Maryland, the Defendant is citizen of a State

other than Maryland, and more than 100 persons fall within the class definitions set forth

below.

2.     Venue is proper in this Court under 28 U.S.C. §1391(a) because a

substantial part of the events or omissions giving rise to the claims herein occurred, and a

substantial part of property that is the subject of the action is situated, within this District.

## II.    PARTIES

3.     Defendant Lincoln is the owner of the Verizon Center (formerly known as

the MCI Center) located in the District of Columbia, which is operated by Monumental

Sports*Entertainment.  Defendant is an entity organized under the laws of the state of

Delaware.

4.     Named Plaintiff Abbe Jolles is a natural person who is a citizen of the

state of Maryland, residing in Bethesda, Maryland.  On September 30, 2013, Ms. Jolles

purchased a ticket from Lincoln to a concert at the Verizon Center when she allowed her

daughter to purchase a ticket using her credit card.  The class on information and belief

includes citizens of at least half of the states.

## III.    INTRODUCTION

5.      This is an action for unlawful trade practices against Lincoln under D.C. Code, §§ 28-3901 *et seq.*  The claims in this case arise from Lincoln's both advertising and offering for sale tickets for admission to sporting events, concerts, family shows, trade shows and other entertainment events held at the Verizon Center ("Events") without the intent to sell them as advertised or offered in violation of D.C. Code § 28-3904(h).

6.      Plaintiff and others who bought tickets from Lincoln were injured by the trade practice because they were overcharged for their tickets when they paid the Excess Charges (including the Kickback Payments) (defined below).

7.      The Verizon Center is a 20,000-seat sports and entertainment facility located at 601 F. Street N.W., Washington, D.C. 20004; it is owned by Lincoln and operated by Monumental Sports*Entertainment ("Monumental").

8.      Lincoln advertises, offers to sell, and sells tickets to Events at the Verizon Center directly and through its ticket agents.

9.      Lincoln uniformly and systematically both advertises and offers for sale tickets at prices without the intent to sell them as advertised or offered at those prices; in particular, Lincoln advertises and offers to sell its tickets at a price that exceeds the ticket prices printed on the ticket, represented by its box office, on the Internet, and over the telephone, and which it offers for sale through its agents.

10.      Lincoln uses a variety of labels to describe the substantial amounts it charges consumers in excess of its advertised ticket prices – labels that are sometimes called "service charges," "service fees," "convenience charges," "processing fees," or similar names (the "Excess Charges").

11.     For each ticket sold, Lincoln and its agents charge and collect from consumers Excess Charges over and above the advertised ticket price in violation of §28-3904(h) of the CPPA.

12.     Pursuant to a financial agreement with its agents, Lincoln then collects for every ticket sold a pre-determined amount of the Excess Charges, over and above the advertised ticket price – irrespective of any services provided by Lincoln (the "Kickback Payments").

13.     The Kickback Payments collected by Lincoln for each ticket sold constitute a part of the ticket price Lincoln actually charges consumers.

14.     As a result of the Kickback Payments collected by Lincoln, Lincoln collects total amounts for each ticket sold for admission to Events at the Verizon Center that exceed the advertised ticket price for that Event and the price at which it offers the tickets.

15.     By agreeing in advance to collect – in every ticket sale – a pre-determined share of the proceeds from the Excess Charges, Defendant knew, understood and intended to sell each ticket for more than the price advertised and offered for sale.

16.     Lincoln's practice of collecting ticket revenue at the back-end of the ticket transaction is a trade practice in violation of District of Columbia law, including but not limited to D.C. Code § 28-3904(h), that drives up consumer ticket prices by inflating the Excess Charges in the amount of the Kickback Payments to Lincoln and that increases the cost of tickets to consumers in excess of the amount at which Lincoln advertises and offers tickets.

17.     Lincoln's above-described advertising and offering of tickets for sale, without the intent to sell such tickets as advertised and offered, has had the effect of misleading and deceiving consumers regarding the price of such tickets by hiding the Kickback Payment component of the ticket price in the Excess Charges of the agents (which the agents represent as their charges and fees for the services they provide for selling the tickets online).

18.     Consumers who purchase tickets from Lincoln for Events at the Verizon Center have no way of avoiding the Kickback Payments because Lincoln and its agent Monumental have a monopoly on the sale of tickets for Events at the Verizon Center.

19.     Consumers have no way to buy tickets for the Events that do not contain the hidden Kickback Payment component of the Excess Charges.

20.     Even if a consumer goes to the Verizon Center box office to purchase a ticket for an Event, the consumer still has to pay the Excess Charges, including the hidden Kickback Payment component.

21.     Consumers must either pay the Excess Charges, including the hidden Kickback Payment component, or forego attending the Event.

22.     The CPPA is a remedial statute that provides that it "shall be construed and applied liberally to promote its purpose" of "assur[ing] that a just mechanism exists to remedy all improper trade practices and deter the continuing of such practices."  D.C. Code § 28-3901 (b)(1).

23.     The CPPA provides for cumulative remedies to consumers, including but not limited to injunctive relief, statutory damages, punitive damages, and the disgorgement by merchants of their ill-gotten gains.  D.C. Code § 28-3905(k).

24.     As a result of Defendant's unlawful trade practices described below, Named Plaintiff and the members of the class have paid more than the advertised price of tickets for admission to Events at the Verizon Center and otherwise have been injured.

## IV.     FACTS APPLICABLE TO ALL COUNTS

25.     Lincoln and its ticket agents are engaged in the business of selling tickets, for profit, for admission to Events at the Verizon Center.

26.     When Lincoln advertises and offers tickets for sale directly and through its agents for admission to Events at the Verizon Center, it does so without intending to sell such tickets for the prices advertised and offered for sale; for each ticket sold, Lincoln knows and intends at the time of advertisement, offer for sale, and sale that it will sell such tickets for a different price and collect more than the price at which it has advertised and offered such tickets for sale.

27.     Defendant advertises the ticket prices to Events at the Verizon Center to induce customers to purchase such tickets for those prices. As stated, however, Defendant does not intend to sell its tickets to consumers at the prices advertised and offered.

28.     Lincoln and its agents impose Excess Charges on the sale of all tickets to Events at the Verizon Center.

29.     Lincoln knows and intends that it will collect more than the price of each ticket advertised and offered for sale for admission to an Event because, as stated, it has a financial arrangement to be paid a pre-determined portion of the Excess Charges for each ticket sold. The additional payment that Defendant collects for each ticket sold is in excess of the advertised price of each ticket.  For each ticket sold, Lincoln collects a Kickback Payment, consisting of a pre-determined share of the "Excess Charges"

revenue paid by the consumer.  Unknown to consumers such as the Named Plaintiff and members of the class, Lincoln has schemed – by taking Kickback Payments – to obtain more for the tickets it advertises and offers to sell than the advertised prices of such tickets. Accordingly, Lincoln's advertisements of its ticket prices are false and deceptive and constitute an unlawful trade practice because – in Lincoln's bait-and-switch advertising technique – for each ticket to a Verizon Center Event, Lincoln collects more money from consumers than its advertised prices.

30.     Defendant falsely and misleadingly represented to Named Plaintiff and members of the class that the cost of admission to Verizon Center Events was the advertised ticket price but, in actuality, the cost of admission was the ticket price *plus* the secret Kickback Payment.

31.     The amount of the Excess Charges paid by Named Plaintiff and members of the class to fund the Kickback Payments collected by Lincoln was a secret profit generator for Lincoln.

32.     At the time Defendant engaged in the above-described conduct, Defendant acted with the intent to advertise and offer for sale its tickets without selling them as advertised or offered. As stated, Defendant knew and intended to collect more for each ticket sold than Defendant advertised and offered such tickets for sale to consumers.

33.     As a result of the above-described unlawful trade practice, Named Plaintiff and members of the class were deceived into paying more for each ticket purchased from Lincoln and its agents than the prices at which such tickets were advertised and offered for sale.

34.     Named Plaintiff seeks for herself and the class the disgorgement of the Kickback Payments collected by Lincoln, or statutory damages, whichever amount is greater.

## V.     FACTS APPLICABLE TO THE NAMED PLAINTIFF

35.     On September 30, 2013, Named Plaintiff, Abbe Jolles, purchased two concert tickets to: Justin Timberlake: The 20/20 Experience World Tour at the Verizon Center for February 24, 2014 (the "Timberlake Concert") by allowing her daughter to purchase the tickets using her credit card.

36.     Plaintiff's tickets to the "Timberlake Concert" had an advertised price of $90.00 each.  That was the price at which the tickets were advertised and offered for sale; it also was the price for admission printed on the face of the tickets. Ms. Jolles' receipt from her purchase represented that $90.00 was the "Full Price Ticket."

37.     In addition to the $90.00 price of each ticket, Lincoln, through its agents, imposed Excess Charges totaling $43.00.   These Excess Charges consisted of: (a) a Service Fee of $15.50 per ticket; (b) a Facility Charge of $3.00 per ticket, and (c) an Order Processing Fee of $6.00.

38.     A pre-determined amount of the Excess Charges paid by Plaintiff was, by design, a secret, built-in part of the admission price to the Timberlake Concert. Defendant knew from the outset of its advertisement and offer for sale of the ticket to the Timberlake Concert that it would be collecting this share of the proceeds from the sale of this ticket.

39.     Lincoln's conduct in advertising and offering for sale tickets to the Timberlake Concert at a different price than it intended to sell these tickets, and without

the intent to sell these tickets for the advertised price, was false, misleading, and constituted an unlawful trade practice.

40.     In particular, by advertising to Named Plaintiff that the cost of admission to the Timberlake Concert was $90.00 per ticket, but by collecting for each ticket more than the advertised and offered price of $90.00, Lincoln violated §28-3904(h) of the CPPA.

41.     The Kickback Payments collected by Lincoln from the sale of tickets for the Timberlake Concert were, in reality, part of the admission price for such tickets.  The kickback to Lincoln of a pre-determined portion of the Excess Charges imposed on Named Plaintiff in connection with her ticket purchases increased the ticket price Lincoln collected from Named Plaintiff over and above the advertised price of such tickets.

42.     As stated, Defendant advertised to Named Plaintiff that $90.00 was the cost of a "Full Price Ticket" to the Timberlake Concert, but Defendant knowingly and intentionally collected from Named Plaintiff more than the $90.00 "Full Price" at which this ticket was advertised and offered for sale by secretly collecting the Kickback Payment.

43.     As a result of Defendant's misleading advertising and unlawful trade practices, Named Plaintiff paid more than the advertised price of Defendant's tickets to attend the Timberlake Concert, including her payment of the Kickback Payments.

## VI.   CAUSE OF ACTION

### Claim 1

### Violation of the D.C. Consumer Protection Procedures Act

44.     Named Plaintiff incorporates herein and re-alleges each of the foregoing

paragraphs as if fully set forth herein.

45.     Defendant is a "merchant" within the meaning of §28-3901(a)(3) of the

CPPA.

46.     Named Plaintiff and members of the class who purchased tickets from

Defendant to Events at the Verizon Center are "consumers" within the meaning of § 28-

3901(a)(2).

47.     Defendant Lincoln, directly and through its agents, advertised and offered

for sale to Named Plaintiff and to members of the class public tickets for admission to

Events at the Verizon Center.

48.     At the time Defendant advertised and offered such tickets for sale,

Defendant did not have the intent to sell to Named Plaintiff and members of the class

these tickets for the prices at which they were advertised and offered for sale.

49.     Rather, Defendant intended to sell such tickets to Named Plaintiff and

members of the class for a price greater than the amount for which such tickets were

advertised and offered for sale.  In particular, Defendant intended to collect as part of the

purchase price for each ticket sold a portion of the Excess Charges paid by the purchaser

of such ticket.

50.     As a result of Defendant's collection of the above-described Kickback

Payments, Defendant sold tickets to Named Plaintiff and members of the class to Events

at the Verizon Center for more than the ticket prices advertised by Defendant.

51.     Defendant's conduct in advertising and offering for sale to Named

Plaintiff and members of the class tickets to Events at a different and lesser price than it

intended to collect for such tickets, and without the intent to sell such tickets for the

advertised price, was false, misleading and constituted an unlawful trade practice in violation of § 28-3904(h) of the CPPA.

52.    Such conduct by Defendant was intentional.  Defendant knew that selling tickets to Events at the Verizon Center for more than the price at which such tickets were advertised and offered for sale would deceive and mislead consumers and cause them harm.

53.    Lincoln intended for the share of the Excess Charges used to fund the Kickback Payments to function as a secret profit generator for Lincoln.

54.    The above-described conduct harmed the Named Plaintiff because she paid more than the advertised price of the tickets she purchased to attend the Timberlake Concert; this conduct also harmed members of the class because they, too, paid more than the advertised price of the tickets that they purchased to attend the Events at the Verizon Center for which they purchased tickets from Defendant and its agents.

55.    As a result of Defendant's false and misleading advertising and deceptive offers of consumer goods for sale, Named Plaintiff and members of the class overpaid for their tickets at the Verizon Center and suffered the losses and damages described herein.

56.    Lincoln's bait-and-switch advertising of the price of its tickets described herein constituted an unlawful trade practice that violated the CPPA.

57.    By engaging in the above-described unlawful trade practices, Defendant injured Named Plaintiff and members of the class by obtaining monies from them to which Defendant was not entitled.

VII.    **CLASS ACTION ALLEGATIONS**

58.    Named Plaintiff brings this action individually and as a class action

11

pursuant to Fed. R. Civ. P. 23 on behalf of a class (the "Class") defined as follows:

> All consumers who, within the past three years, purchased one or more tickets for admission to events at the Verizon Center, where Defendant collected charges from those persons or entities in excess of the full price of the ticket(s) purchased.  Excluded from the Class are officers and directors of the Defendant, as well as any personnel of the Court.

59.    The Class as defined above is identifiable.  The Named Plaintiff is a member of the Class.

60.    The Class consists, to Plaintiff's information and belief, of thousands of individuals, and is thus so numerous that joinder of all members is clearly impracticable.

61.    There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual members of the Class.  The predominating questions include, but are not limited to:

a. Whether the Defendant systematically collected charges from Class Members through unlawful trade practices;

b. Whether the Defendant systematically engaged in false advertising;

c. Whether the Defendant misrepresented material facts to the Class when charging and collecting fees in excess of the face value of the tickets sold;

d. Whether the Defendant should be enjoined from further engaging in such improper conduct;

e. Whether Named Plaintiff and members of the Class have sustained damages and the proper measure of such damages.

62.    The claims of the Named Plaintiff are typical of the claims of each member of the Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on

and arise out of identical facts constituting the wrongful conduct of Defendant.

63.     Plaintiff will fairly and adequately protect the interest of the Class. Named Plaintiff and the Class have retained counsel experienced and competent in class actions and complex consumer litigation.

64.     Named Plaintiff has no conflict of interest with the Class.

65.     The prosecution of the separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

66.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

67.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.   To Plaintiff's knowledge, no other litigation against Defendant is currently pending by other members of the Class regarding the allegations in this Complaint.

68.     There are no unusual difficulties in the management of this case as a class action.

69.     Actual damages can also be determined on a class wide basis.

## VIII.   RELIEF DEMANDED

WHEREFORE, Plaintiff, on behalf of herself and the class defined herein, demands from Defendant Lincoln the following:

1. That this action proceed both as a class action as provided for by Fed. R. Civ. P. 23;

2. Actual damages for the Named Plaintiff and each individual member of the class, trebled or, alternatively, $1,500.00 per violation of the CPPA, whichever is greater;

3. Punitive damages for the Named Plaintiff and each individual member of the class;

4. Reasonable costs and attorneys' fees pursuant to the CPPA;

5. An injunction enjoining Defendant from continuing the unlawful trade practices described herein;

6. Prejudgment interest in an amount to be determined at trial; and

7. Such further relief as the Court may deem just and proper.

By:   /s/William Claiborne
William Claiborne
DC Bar # 446579

Dated:  September 24, 2014

2020 Pennsylvania Avenue, N.W.
Suite 395
Washington, D.C.  20006
Phone: 202-824-0700
Email: claibornelaw@gmail.com

**Attorney for Named Plaintiff
and the class**

## JURY TRIAL

Plaintiff demands a trial by a jury of six of all issues so triable.


/s/William Claiborne
William Claiborne